UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| DEVON R. MILLER, | ) | CIVIL ACTION NO. 2:21-CV-4867 |
| | ) | |
| *On behalf of himself and all others* | ) | JUDGE EDMUND A. SARGUS, JR. |
| *similarly situated,* | ) | |
| | ) | MAGISTRATE JUDGE |
| Plaintiff, | ) | ELIZABETH P. DEAVERS |
| | ) | |
| *v.* | ) | |
| | ) | |
| BALTIMORE BUILDERS SUPPLY & | ) | |
| MILLWORK, INC., *et al.,* | ) | |
| | ) | |
| Defendants. | ) | |

## JOINT MOTION FOR CERTIFICATION OF THE SETTLEMENT CLASS, FINAL APPROVAL OF THE CLASS ACTION SETTLEMENT, AND OTHER ASSOCIATED RELIEF

The parties – Plaintiff Devon R. Miller and Defendants Baltimore Builders Supply &

Millwork, Inc., Hometown Hardware, Inc., Richard E. Foreman, and Robin L. Hayes –

respectfully and jointly move the Court to enter a final order approving, as fair, reasonable, and

adequate, the settlement of Plaintiff Devon R. Miller's claims pursuant to the Fair Labor

Standards Act ("FLSA"), 29 U.S.C. § 216(b), and the settlement of Covered Class Members'

state-law claims pursuant to Fed. R. Civ. P. 23(e). In addition to the below Memorandum in

Support, the parties attach the following in support of this joint motion:

Exhibit 1:   Proposed *Order Granting Joint Motion for Certification of the Settlement Class, Final Approval of the Class Action Settlement, and Other Associated Relief* ("Proposed Final Order and Judgment");

Exhibit 2:   Declaration of Jennifer Mills for Rust Consulting, Inc. (hereinafter "Rust Consulting");

Exhibit 3:   Final Class Member List; and

Exhibit 4:   Declaration of Interim Class Counsel Ryan A. Winters of Scott & Winters Law Firm, LLC ("Declaration of Interim Class Counsel").

Points and authorities supporting approval of the settlement were submitted in the parties' Joint Motion for Preliminary Approval of Class Action Settlement (ECF #27) ("Preliminary Approval Motion"), which was adopted by the Court in its April 4, 2023 Order, which granted preliminary approval of the settlement (ECF #28) ("Preliminary Approval Order"). Today's motion incorporates the earlier submissions and supplements their content. At the time of this filing, no Covered Class Members, or any other person, has asserted an objection to the settlement.

Respectfully Submitted,

*s/ Kevin M. McDermott II*
Joseph F. Scott (0029780) (Trial Counsel)
Ryan A. Winters (0086917)
**SCOTT & WINTERS LAW FIRM, LLC**
P: (216) 912-2221     F: (440) 846-1625
50 Public Square, Suite 1900
Cleveland, OH 44113
jscott@ohiowagelawyers.com
rwinters@ohiowagelawyers.com

Kevin M. McDermott II (0090455)
**SCOTT & WINTERS LAW FIRM, LLC**
P: (216) 912-2221     F: (440) 846-1625
11925 Pearl Rd., Suite 310
Strongsville, Ohio 44136
kmcdermott@ohiowagelawyers.com

*Attorneys for Plaintiff and
Interim Class Counsel*

*s/ Morris L. Hawk      (via email consent)*
Morris L. Hawk (0065495) (Trial Counsel)
mhawk@ralaw.com
**ROETZEL & ANDRESS, LPA**
1375 East Ninth Street
One Cleveland Center, 10th Floor
Cleveland, OH 44114
(T) 216.623.0150 (F) 216.623.0134

*Attorney for Defendants*

## <u>TABLE OF CONTENTS</u>

Table of Authorities .................................................................................................................. iv

Memorandum in Support ............................................................................................................1

I.       Introduction ........................................................................................................1

II.      Background and Summary of the Claims and the Terms of Settlement ............................2

III.     Preliminary Approval of the Class Settlement .................................................4

IV.    The Court-Approved Notice Process ................................................................5

V.     Argument ...........................................................................................................5

        A.     The Court's Preliminary Approval .........................................................6

        B.     The Results of the Notice Process Favor Approval ...............................7

        C.     Numerosity of the Settlement Class .......................................................8

        D.     The Requested Attorney Fee and Litigation Costs Reimbursement
               Should be Approved ............................................................................11

               1.     The *Ramey* Six-Factor Test Supports the
                       Reasonableness of the Fee Award ................................................12

               2.     A Lodestar Cross-Check Supports the
                       Reasonableness of the Requested Fee ...........................................16

                    a.     Interim Class Counsel's Hourly Rates are
                           Reasonable .........................................................................17

                    b.     Interim Class Counsel's Hours Expended
                           are Reasonable ...................................................................19

               3.     The Lodestar Method Also Supports the
                       Reasonableness of the Requested Fee ...........................................23

                 4.     The Costs Expended by Interim Class Counsel were
                       Both Reasonable and Necessary ...................................................25

VI.    Conclusion .......................................................................................................25

Certificate of Service ................................................................................................................27

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Adcock–Ladd v. Secretary of Treasury,* 227 F.3d 343 (6th Cir.2000) .......................................... 18

*Afro American Patrolmen's League v. Duck,* 503 F.2d 294 (6th Cir. 1974) ........................... 9, 10

*Almonte v. Marina Ice Cream Corp.,* S.D.N.Y. No. 1:16-cv-00660 (GBD), 2016 U.S. Dist. LEXIS 171033 (Dec. 8, 2016) ................................................................... 10

*Arp v. Hohla & Wyss Enters., LLP*, No. 3:18-cv-119, 2020 U.S. Dist. LEXIS 207512 (S.D. Ohio Nov. 5, 2020) ........................................................................................................ 23

*Barnes v. Winking Lizard, Inc.*, N.D.Ohio No. 1:18CV952, 2019 U.S. Dist. LEXIS 65657 (Mar. 26, 2019) ............................................................................................... 13, 15

*Beckman v. KeyBank, N.A.*, 293 F.R.D. 467 (S.D.N.Y.2013) ..................................................... 15

*Berry v. Fun Time Pool & Spa, Inc.*, No. 2:20-cv-1610, 2020 U.S. Dist. LEXIS 148836 (S.D. Ohio Aug. 18, 2020) ...................................................................................... 19

*Blum v. Stenson*, 465 U.S. 886, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984) .................................... 17

*Bowling v. Pfizer, Inc.,* 102 F.3d 777 (6th Cir.1996) ............................................................. 16, 23

*Carr v. Guardian Healthcare Holdings, Inc.*, S.D.Ohio No. 2:20-cv-6292, 2022 U.S. Dist. LEXIS 32094 (Jan. 19, 2022) ....................................................................................... 11

*Castillo v. Morales, Inc.,* S.D.Ohio No. 2:12-CV-650, 2015 U.S. Dist. LEXIS 192936 (Dec. 22, 2015) ........................................................................................................ 8, 17

*Clark v. Pizza Baker, Inc.,* S.D.Ohio No. 2:18-cv-157, 2022 U.S. Dist. LEXIS 198354 (Oct. 31, 2022) ....................................................................................... 12, 13, 19

*Connectivity Sys. Inc. v. Nat'l City Bank,* No. 2:08–CV–1119, 2011 WL 292008 (S.D.Ohio Jan.26, 2011) ........................................................................................................ 11

*Cordova v. BAE Sys. Technology Solutions & Servs.,* S.D.Cal. No. 20-CV-2425 JLS (MDD), 2022 U.S. Dist. LEXIS 18395 (Feb. 1, 2022) ............................................................. 9

*Cypress v. Newport New General and Nonsectarian Hops. Ass'n,* 375 F.2d 648 (4th Cir. 1967) ........................................................................................................................ 10

*Davis v. Northside Realty Associates, Inc.,* 95 F.R.D. 39, 1982-83 Trade Cas. (CCH), 35 Fed. R. Serv. 2d 1266, 35 Fed. R. Serv. 2d 1275 (N.D. Ga. 1982) ........................................... 9

*Dillow v. Home Care Network, Inc.*, No. 2:16-cv-612, 2018 U.S. Dist. LEXIS 170579, 2018 WL 4776977 (S.D. Ohio Oct. 3, 2018) ................................................................... 17, 23

*Dillworth v. Case Farms Processing, Inc.*, N.D.Ohio No. 5:08-cv-1694, 2010 U.S. Dist. LEXIS 20446 (Mar. 8, 2010) ............................................................................... 12, 13

*Estate of McConnell v. EUBA Corp.*, No. 3:18-cv-00355, 2021 U.S. Dist. LEXIS 92836 (S.D. Ohio May 17, 2021) .................................................................................... 19

*Feiertag v. DDP Holdings, LLC*, S.D.Ohio No. 14-CV-2643, 2016 U.S. Dist. LEXIS 122297 (Sep. 9, 2016) ........................................................................................ 16, 17

*Foster v. Residential Programs*, S.D.Ohio No. 2:19-cv-2358, 2021 U.S. Dist. LEXIS 30963 (Feb. 18, 2021) ............................................................................................ 19

*Ganci v. MBF Insp. Servs.*, S.D.Ohio No. 2:15-cv-2959, 2019 U.S. Dist. LEXIS 207645 (Dec. 3, 2019) ............................................................................................... 17, 23

*Gascho v. Global Fitness Holdings, LLC*, 822 F.3d 269 (6th Cir.2016) ..................................... 16

*Geier v. Sundquist*, 372 F.3d 784 (6th Cir.2004) ......................................................................... 17

*Gentrup v. Renovo Servs., LLC*, 2011 U.S. Dist. LEXIS 67887 (S.D. Ohio, June 24, 2011) ......................................................................................................................... 13

*Gresky v. Checker Notions Co.*, No. 3:21-cv-01203, 2022 U.S. Dist. LEXIS 154506 (N.D. Ohio Aug. 26, 2022) ................................................................................... 19

*Gunter v. Diamond Technical Services, Inc.*, No. 2:20-cv-01428 (W.D. Penn. May 6, 2022) ......................................................................................................................... 18

*Hopson v. Hanesbrands Inc.*, N.D.Cal. No. CV-08-0844 EDL, 2009 U.S. Dist. LEXIS 33900 (Apr. 3, 2009) ............................................................................................... 9

*In re Am. Med. Sys., Inc.*, 75 F.3d 1069 (6th Cir. 1996) ................................................................ 9

*In re Beer Distrib. Antitrust Litig.*, 188 F.R.D. 557 (N.D. Cal. 1999) ......................................... 10

*In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litigation*, N.D.Ohio No. 1:08-WP-65000 (MDL 2001), 2016 U.S. Dist. LEXIS 130467 (Sep. 23, 2016) ....................... 7

*Kis v. Covelli Ents.*, N.D.Ohio No. 4:18-cv-54, 2020 U.S. Dist. LEXIS 93929 (May 29, 2020) ........................................................................................................................... 9

*Lowther v. AK Steel Corp.*, S.D.Ohio No. 1:11-cv-877, 2012 U.S. Dist. LEXIS 181476, 2012 WL 6676131 (Dec. 21, 2012) ................................................................. 14, 17, 23

*Macaluso v. Zirtual Startups, LLC*, S.D.Ohio No. 2:19-CV-3616, 2021 U.S. Dist. LEXIS 154243 (Aug. 17, 2021) ............................................................................................. 16

*McKnight v. Erico Int'l Corp.*, No. 1:21-cv-01826 (N.D. Ohio Feb. 8, 2023) ............................ 19

*Odom v. Hazen Transport, Inc.*, 275 F.R.D. 400 (W.D.N.Y. 2011)............................................. 10

*Osman v. Grube, Inc., N.D.Ohio No. 3:16-cv-00802-JJH,* 2018 U.S. Dist. LEXIS 78222
  (May 4, 2018) ...................................................................................................................... 18

*Perry v. Beard*, S.D.Ohio No. 3:17-cv-161, 2021 U.S. Dist. LEXIS 13717 (Jan. 23, 2021) ....... 19

*Pineda v. Pit Columbus, LLC*, No. 2:17-cv-668, 2017 U.S. Dist. LEXIS 195288 (S.D.
  Ohio Nov. 28, 2017) ............................................................................................................. 19

*Ramey v. Cincinnati Enquirer, Inc.*, 508 F.2d 1188 (6th Cir. 1974) ........................................... 12

*Rangel v. Paramount Heating & Air Conditioning, LLC*, No. 2:17-cv-473, 2020 U.S.
  Dist. LEXIS 39157 (S.D. Ohio Mar. 6, 2020) ..................................................................... 19

*Rapp v. Forest City Techs., Inc.,* No. 1:20-cv-02059 (N.D. Ohio Feb. 16, 2023) ....................... 18

*Rawlings v. Prudential–Bache Prop., Inc.*, 9 F.3d 513 (6th Cir. 1993)............................ 11, 16, 23

*Rikos v. P&G*, S.D.Ohio No. 1:11-cv-226, 2018 U.S. Dist. LEXIS 72722 (Apr. 30, 2018)........ 22

*Slaven v. BP Am., Inc.,* 190 F.R.D. 649 (C.D. Cal. 2000) ............................................................. 9

*Swigart v. Fifth Third Bank*, S.D.Ohio No. 1:11-cv-88, 2014 U.S. Dist. LEXIS 94450
  (July 11, 2014) ............................................................................................. 11, 14, 17, 23

*Thorn v. Bob Evans Farms, Inc.*, No. 2:12-CV-00768, 2016 U.S. Dist. LEXIS 195207,
  2016 WL 814044 (S.D. Ohio Feb. 26, 2016) ...................................................................... 16

*Town of New Castle v. Yonkers Contracting Co.,* 131 F.R.D. 38 (S.D.N.Y. 1990) .................... 10

*Walls v. JP Morgan Chase Bank, N.A.*, Case No. 3:11-cv-673-DJH, 2016 U.S. Dist.
  LEXIS 142325 (W.D. Ky. Oct. 13, 2016) ............................................................................ 22

*Waters v. To You*, S.D.Ohio No. 3:19-cv-372, 2022 U.S. Dist. LEXIS 139084 (Aug. 1,
  2022) ............................................................................................................................. 19, 23

*Wright v. Premier Courier, Inc.*, S.D.Ohio No. 2:16-cv-420, 2018 U.S. Dist. LEXIS
  140019 (Aug. 17, 2018) ....................................................................................................... 15

*Young v. Nationwide Mut. Ins. Co.,* 693 F.3d 532 (6th Cir. 2012) ........................................ 9, 10

**Rules**

Fed. R. Civ. P. 23 .................................................................................................................. passim

**Statutes**

29 U.S.C. § 207 ...................................................................................................................... 2, 5

29 U.S.C. § 216 ................................................................................................. i, 18

O.R.C. § 4111.03 ............................................................................................... 2

O.R.C. § 4111.10 ............................................................................................... 2

**Other Authorities**

"A. Miller," "An Overview of Federal Class Actions: Past, Present and Future,"
monograph, Federal Judicial Center (Dec. 1977) ...................................... 9

Frederick C. Dunbar, Todd S. Foster, Vinita M. Juenja, Denise N. Martin, Recent Trends
III: *What Explains Settlements in Shareholder Class Actions?* (National Economic
Research Assocs. (NERA) June 1995) ...................................................... 13

<u>**MEMORANDUM IN SUPPORT**</u>

## I. INTRODUCTION

Plaintiff and Defendants submit this memorandum in support of their joint motion for final approval of the settlement of this class action lawsuit. On April 4, 2023, the Court entered the Preliminary Approval Order, which preliminarily approved the settlement and authorized the issuance of notice to Class Members. (ECF #28.) In the Preliminary Approval Order, the Court preliminarily appointed Scott & Winters Law Firm, LLC as Interim Class Counsel. (ECF #28 at PageID #211 ¶ 6); *see* Fed. R. Civ. P. 23(g)(3).

The notice process is now complete, and the settlement is ripe for final approval. Notably, no Class Member, or any other third party, has objected to the settlement. In anticipation of the September 13, 2023, 10:00 a.m. fairness hearing, the parties file the above motion and this memorandum in support and ask the Court to enter an order:

- Certifying, pursuant to Fed. Rs. Civ. P. 23(a) and 23(b)(3), a Settlement Class consisting of all individuals listed in the Preliminary Class Member List and Allocation Schedule attached as Exhibit E [to the Joint Motion for Preliminary Approval – ECF #27-5], which includes all present and former hourly non-exempt employees of Defendants during the period of September 30, 2019 to November 19, 2021 who worked overtime hours during one or more workweeks and who were not paid overtime compensation at one and one-half times the employee's regular rate of pay for all hours worked in excess of forty (40) hours per workweek, and who did not request exclusion from the settlement (the "Settlement Class," a Final Class List of whom is attached as Exhibit 3);[1]

- Approving, pursuant to Fed. R. Civ. P. 23(e)(2), the settlement of this action as "fair, reasonable, and adequate;"

- Approving Covered Class Members' waiver of their wage and hour claims as provided in the Settlement Agreement;

- Appointing, pursuant to Fed. R. Civ. P. 23(g)(1), the law firm of Scott & Winters Law Firm, LLC to serve as permanent Class Counsel; and

---

[1] The parties attach an updated Final Class Member List, which removes all individuals who have requested exclusion in this matter, as Exhibit 3.

1

- Approving, pursuant to Fed. R. Civ. P. 23(h), a payment to Interim Class Counsel of $28,500.00 (representing $27,412.02 in attorneys' fees and $1,087.98 in costs).

A proposed Final Order and Judgment is attached as Exhibit 1 for the Court's consideration.

## II.     BACKGROUND AND SUMMARY OF THE CLAIMS AND THE TERMS OF SETTLEMENT

Plaintiff Devon R. Miller commenced this action on September 30, 2021 against Baltimore Builders Supply & Millwork, Inc., Hometown Hardware, Inc., Richard E. Foreman, and Robin L. Hayes, seeking all available relief under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201, *et seq.,* and the Ohio Minimum Fair Wage Standards Act, Ohio Rev. Code Ann. §§ 4111.01, *et seq.* (Compl., ECF #1.) Plaintiff's Complaint alleged that he and other similarly situated employees were willfully paid their regular, straight time hourly rates for all hours worked, including overtime hours that should have been paid at "one and one-half times" the employees' "regular rate[s]" in violation of federal and state law, and are owed liquidated damages, attorneys' fees, and costs pursuant to the FLSA, 29 U.S.C. § 207, and Ohio Revised Code §§ 4111.03, 4111.10. (*Id.* at ¶¶ 26-31, 46-58.) Defendants denied Plaintiff's claims and asserted affirmative defenses. (*See generally* ECF #10, Defs.' Answer to Compl.)

Discovery included written discovery, and, ultimately, Defendants provided responses to *Plaintiff's Omnibus First Set of Discovery Requests to Defendants*, produced approximately 1,900 pages of PDF documents, and produced Microsoft Excel compatible spreadsheets containing payroll data comprised of approximately 168,000 data points, which permitted a precise calculation of the alleged unpaid overtime wages for Plaintiff and all Class Members based off 100% of Plaintiff's and all Class Members' payroll records during the relevant period.

Settlement negotiations were arduous and contentious. In advance of the arm's length negotiations, Plaintiff provided an itemization of damages and settlement demand and Defendants provided a response to the demand. Negotiations occurred over an approximate 30-day period, and included comprehensive discussions about the data produced by Defendants, including a back-and-forth discussion about discretionary COVID-10-related bonuses Defendants paid to employees in approximately December 2020, as well as revisions of the analysis and methodology leading to the calculations of exact amounts of class-wide damages (by class member) that would be presented at trial. Ultimately, each side shared damages computations with the opposing party, which ultimately led to a settlement of the action. Subsequent to the negotiations, the Parties drafted and filed a notice of settlement (ECF #24), and subsequently drafted and further negotiated formal settlement documents for filing with the Court.

The Settlement Class consists of:

All individuals listed in the Preliminary Class Member List and Allocation Schedule attached as Exhibit E [to the Joint Motion for Preliminary Approval – ECF #27-5], which includes all present and former hourly non-exempt employees of Defendants during the period of September 30, 2019 to November 19, 2021 who worked overtime hours during one or more workweeks and who were not paid overtime compensation at one and one-half times the employee's regular rate of pay for all hours worked in excess of forty (40) hours per workweek, and who did not request exclusion from the settlement (the "Settlement Class");

(ECF #27-1, Settlement Agreement at PageID ##163-64 (defining "Potential Class Members" and "Covered Class Members".) Payments to Covered Class Members are based on each Class Member's actual damages during the relevant time period. Class Members will be paid, *after* deduction of attorneys' fees and expenses, an average of 117% of each Class Member's possible overtime damages, subject to a $100 minimum payment. As to the class, inherent in the proposed distribution method in which Class Members are distributed settlement payments based on each

Class Member's exact calculated damages during the relevant period, subject to a $100 minimum payment, the settlement proposal treats Class Members equitably relative to each other. *See* Fed. R. Civ. P. 23(e)(2)(D).

The distribution method, based on each respective Class Member's actual damages during the applicable time period with a $100.00 minimum payment, is eminently the most equitable proposed method of distributing relief to each member of the class. Plaintiff Miller will participate in this recovery under the same procedure applicable to other Class Members, and will also receive a third year of recovery and liquidated damages as provided for by the FLSA. This is not a "claims-made" settlement – all Covered Class Members will receive a settlement check. *See* Fed. R. Civ. P. 23(e)(2)(D). **No person – Covered Class Member, Potential Class Member, or otherwise – has objected to the settlement.**

In addition, Interim Class Counsel will receive attorneys' fees and reimbursed litigation costs; after reductions for litigation expenses, the attorney fee recovery will equal approximately 32.06% of the total settlement amount. As provided in the Settlement Agreement, attorneys' fees and costs to Interim Class Counsel will not be paid by Defendants until after the final approval order is issued by the Court, contemporaneously along with the settlement payments to Plaintiff and all other Class Members. (*See* ECF #27-1 at 8-10 ¶¶ 9-11.)

III.    **PRELIMINARY APPROVAL OF THE CLASS SETTLEMENT**

On March 13, 2023, the parties filed their Joint Motion for Preliminary Approval of Class Action Settlement and supporting exhibits. (ECF ##27, 27-1, 27-2, 27-3, 27-4., 27-5.) On April 4, 2023, the Court entered the Preliminary Approval Order, (i) preliminarily approving the settlement; (ii) approving the class Notice form and protocols; (iii) preliminarily appointing Scott & Winters Law Firm as interim Class Counsel and Named Plaintiff Miller as class

representative; and (iii) scheduling a fairness hearing for September 13, 2023. (*See* ECF #28.)

## IV.    THE COURT-APPROVED NOTICE PROCESS

Per the Settlement Agreement and Preliminary Approval Order, Settlement Administrator Rust Consulting performed address updates and mailed the Notice forms to 51 putative class members. (*See* Ex. 2, Declaration of Settlement Administrator Rust Consulting – Program Manager Jennifer Mills ("Rust Consulting Decl.") at ¶¶ 7-10.) One notice form was re-mailed pursuant to the Court-approved protocols. (*See id.* at ¶ 10.)

Class Members had until July 8, 2023 to object to or seek exclusion from the settlement. (*See id.* at ¶ 9.) **No class member has objected to the settlement**, and 15 class members have sought to be excluded from the settlement. (*See id*. at ¶¶ 14-15.)

## V.    ARGUMENT

This settlement covers the Named Plaintiff and 35 other (36 total) current and former non-exempt hourly employees of Defendants, who claim that, as a result of Defendants' alleged unlawful overtime calculation and payment practices and/or policies, they are owed overtime compensation, liquidated damages, attorneys' fees, and costs pursuant to the FLSA, 29 U.S.C. § 207, as to the Named Plaintiff, and O.R.C. §§ 4111.03, 4111.10, as to the Named Plaintiff and Covered Class Members. (*See generally* ECF #1, Compl.; *see also* ECF #27-1, Settlement Agreement at PageID ##162-63, 166 (defining "Class Member Released Claims"), 167 (defining "Release of Claims of Named Plaintiff").) The settlement resolves wage-and-hour claims of Named Plaintiff and Covered Class Members as provided in the Settlement Agreement. (*Id.* at PageID #164 (defining "Covered Class Members").)

### A.    The Court's Preliminary Approval

As to the claims asserted, and to be settled, in this action, the parties' Preliminary Approval Motion made the required showing under Fed. R. Civ. P. 23. Based on that showing, the Court ruled that it "finds that the Motion should be **GRANTED**." (ECF #28 at PageID #209.) In its Preliminary Approval Order, the Court "**PRELIMINARILY APPROVED**" the Settlement Agreement in this action as "fair, reasonable, and adequate," because it appeared that, at the final approval stage, the Court "'will likely be able to' approve the Settlement under the criteria described in Federal Rule of Civil Procedure [] 23(e)(2) and certify the settlement class under the criteria described in Civil Rules 23(a) and 23(b)(3)." (ECF #28 at ¶ 2 (citing *see* Fed. R. Civ. P. 23(e)(1)(B)(i)-(ii).)

In its Order, the Court approved the proposed "Notice of Class Action Settlement" form ("Notice Form") and ordered that it "shall be sent to the 'Potential Class Members' as defined in the Settlement Agreement, pursuant to such protocols." (*Id.* at ¶ 10.) The Court found that the Notice Form, including the notice procedures outlined in the Settlement Agreement, "meet the requirements of Civil Rule 23 and due process, and is the best notice practicable under the circumstances, and shall constitute due and sufficient notice to all persons entitled to notice." (*Id.*)

The Court further preliminarily approved Plaintiff Devon Miller as the class representative of the Settlement Class, and preliminarily approved Scott & Winters Law Firm as interim Class Counsel. (*Id.* at ¶¶ 5-6.)

Thus, the Court's convening of the Fairness Hearing on September 13, 2023 will complete the notice-and-hearing process prescribed by Rule 23(e). *See* Fed. R. Civ. P. 23(e)(1-2) (a class settlement may be approved only after notice and hearing, and upon finding that it is

"fair, reasonable, and adequate"); *In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litigation,* N.D.Ohio No. 1:08-WP-65000 (MDL 2001), 2016 U.S. Dist. LEXIS 130467, at *24-28 (Sep. 23, 2016) (granting final approval of a class settlement under Rule 23(e)).

### B.      The Results of the Notice Process Favor Approval

The results of the notice process are reported in the declaration from Settlement Class Administrator Rust Consulting, attached as Exhibit 2 and incorporated by reference herein. Ms. Jennifer Mills is a Senior Project Manager for Rust Consulting, Inc., the firm retained as Settlement Administrator. (Ex. 2, Rust Consulting Decl. ¶¶ 1-3.) Ms. Mills explains that:

> Rust was engaged by Counsel for the Plaintiffs and Counsel for the Defendants (collectively the "Parties") to provide notification services in *Devon R. Miller. v. Baltimore Builders Supply & Millwork, Inc., et al.* Settlement of Class Action ("Settlement"). Duties included: a) preparing, printing and mailing of the *Notice and Change of Address Form* (collectively the "Class Notice"); b) tracking of requests for exclusions, objections and Change of Address Forms; c) drafting and mailing Settlement Award checks; and d) for such other tasks as the Parties mutually agree or the Court orders Rust to perform.

(*Id.* at ¶ 3.) Pursuant to the Settlement Agreement and the Court's Preliminary Approval Order, Ms. Mills states that "[o]n May 9, 2023, Class Notices were mailed to 51 Class Members contained in the Class List via First Class mail. The Class Notice advised Class Members that they could submit a request for exclusion, objection and/or dispute postmarked by July 8, 2023." (*Id.* at ¶ 9.) So as to ensure that notices were sent to putative Class Members at the most updated and accurate address available, Ms. Mills reports that:

> Rust performed one (1) address trace on a Class Notice that was undeliverable for the first time. The address trace utilizes the Class Member's name, previous address and Social Security Number for locating a current address. Of the one (1) trace performed, one (1) more current address was obtained and the Class Notice was promptly re-mailed to the Class Member via First Class mail. The one (1) Class Notice mailed to a more current address identified from trace was not returned to Rust as undeliverable a second time. As of this date, zero (0) Class Notices remain undeliverable.

As of this date, zero (0) Class Notices were returned by the Post Office with forwarding addresses attached as of July 8, 2023.

As of this date, Rust received zero (0) requests to re-mail the Class Notice.

As of this date, Rust received two (2) Change of Address Forms.

(*Id.* at ¶¶ 10-13, respectively.) In addition, Ms. Mills reports that "[a]s of this date, Rust received zero (0) objections." (*Id.* at ¶ 15.) **The fact that no Class Members have objected to the settlement unequivocally shows that the affected individuals support the settlement and want it to be approved.**

Ms. Mills also reports, as further addressed below, that "[a]s of this date, Rust received 15 requests for exclusion." (*Id.* at ¶ 14.) Finally, Ms. Mills reports that "[t]he total cost for the administration of this Settlement, including fees incurred and future costs for completion of the administration is estimated to be $8,000.00," which is consistent with the  preliminarily approved Settlement Agreement (ECF #27-1 at PageID #170-71, ¶ 11).

### C.    Numerosity of the Settlement Class

As noted by Ms. Mills, notices were sent to 51 potential Class Members (*id.* at ¶¶ 7-9), and Rust received 15 requests for exclusion (*id.* at ¶ 14). Therefore, the total included number of class members is 36. As provided below, 36 class members is sufficient to satisfy the numerosity requirement contained in Fed. R. Civ. P. 23(a).

Rule 23(a)(1) requires a showing that the proposed class is "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). The Supreme Court has noted that "[t]he numerosity requirement requires examination of the specific facts of each case and imposes no absolute limitations." *Gen. Tel. Co. v. Eeoc,* 446 U.S. 318, 330, 100 S.Ct. 1698, 64 L.Ed.2d 319 (1980), *as cited in* 1 McLaughlin on Class Actions § 4:5 (19th ed.). The Sixth Circuit has held that there is "no strict numerical test" to establish numerosity. *Castillo v. Morales, Inc.,* 302

8

F.R.D. 480, 487 (S.D. Ohio 2014) (citing *Young v. Nationwide Mut. Ins. Co.,* 693 F.3d 532, 541 (6th Cir. 2012)).

A class of 35 employees, for example, has been found sufficient by the Sixth Circuit. *See Afro American Patrolmen's League v. Duck*, 503 F.2d 294, 298 (6th Cir. 1974) ("the possible class [that] consists of no more than the 35 minority group members … is so numerous as to make joinder of all impracticable"); *see also Kis v. Covelli Ents.,* N.D.Ohio No. 4:18-cv-54, 2020 U.S. Dist. LEXIS 93929, at *5 (May 29, 2020), fn. 19 (citing *In re Am. Med. Sys., Inc*., 75 F.3d 1069, 1076 (6th Cir. 1996) ("[T]he Sixth Circuit has previously held that a class of 35 was sufficient to meet the numerosity requirement.")); *Hopson v. Hanesbrands Inc.,* N.D.Cal. No. CV-08-0844 EDL, 2009 U.S. Dist. LEXIS 33900, at *7 (Apr. 3, 2009) ("Numerosity is generally found when a class comprises forty or more members, and not if the class comprises twenty-one or fewer members.") (citations omitted); *Davis v. Northside Realty Associates, Inc.,* 95 F.R.D. 39, 43, 1982-83 Trade Cas. (CCH) ¶ 64984, 35 Fed. R. Serv. 2d 1266, 35 Fed. R. Serv. 2d 1275 (N.D. Ga. 1982) ("If the class has more than 40 people in it numerosity is satisfied; if the class has less than 25 people in it, numerosity is lacking") (quoting "A. Miller," "An Overview of Federal Class Actions: Past, Present and Future," monograph, Federal Judicial Center (Dec. 1977)); *Slaven v. BP Am., Inc.,* 190 F.R.D. 649, 654 (C.D. Cal. 2000) ("numerosity requirement is satisfied by a showing of 25-30 members.); *Cordova v. BAE Sys. Technology Solutions & Servs.,* S.D.Cal. No. 20-CV-2425 JLS (MDD), 2022 U.S. Dist. LEXIS 18395, at *9 (Feb. 1, 2022) ("the proposed Settlement Class consists of thirty-one Class Members. Because of the presumption of numerosity created by twenty-five to thirty members, it logically follows that joinder of thirty-one members is impracticable for purposes of Rule 23(a)(1) and the numerosity requirement therefore is satisfied here."); *In re Beer Distrib. Antitrust Litig*., 188 F.R.D. 557, 562

(N.D. Cal. 1999) (27-63 class members satisfied the numerosity requirement where while there was a "question as to exactly how many class members exist, the record reflects that there are more than twenty-five"); *Almonte v. Marina Ice Cream Corp.,* S.D.N.Y. No. 1:16-cv-00660 (GBD), 2016 U.S. Dist. LEXIS 171033, at *5 (Dec. 8, 2016) ("because there are 34 Class Members … joinder is impracticable") (citing *Odom v. Hazen Transport, Inc*., 275 F.R.D. 400, 407 (W.D.N.Y. 2011) (finding numerosity met with 16 class members); *Town of New Castle v. Yonkers Contracting Co.,* 131 F.R.D. 38, 41 (S.D.N.Y. 1990) (finding numerosity met with 36 class members); *Cypress v. Newport New General and Nonsectarian Hops. Ass'n,* 375 F.2d 648, 653 (4th Cir. 1967) (numerosity met with 18 class members)).

Here, while the settlement class consisting of 36 members is close to the generally accepted practice of clearly finding numerosity for 40 members or more, the Sixth Circuit, previously noting that there is "no strict numerical test" to establish numerosity, *Young*, 693 F.3d at 541, has allowed a class of 35 employees to proceed into certification, *see Afro American Patrolmen's League,* 503 F.2d at 298. Moreover, as opposed to a contested class certification matter, with respect to this Settlement Class in this case, each Defendants, Named Plaintiff, and counsel on both sides support the Settlement. (*See* ECF ##27, 27-1.) That is, Defendants (and any potential class members who have requested exclusion or any other third party that may be affected by this settlement), do not object to the settlement or otherwise argue that the proposed Settlement Class fails to meet the numerosity requirement. That is because, among other reasons, such a settlement will result in finality to all parties, including Covered Class Members and Defendants to this action, and excluder potential class members now reserve their right to proceed independently against Defendant if they choose to do so. In the present case, the class consists of 36 Covered Class Members in total, and thus pursuant to the Sixth Circuit authority

10

outlined above, numerosity is met as "joinder of all members is impracticable." Fed. R. Civ. P.

23(a).

    **D.**    **The Requested Attorney Fee and Litigation Costs Reimbursement Should be Approved**

Plaintiff respectfully requests approval of the attorneys' fees award and litigation costs

reimbursement as provided in the Settlement Agreement in the total amount of $28,500.00. (ECF

#27-1, Settlement Agreement at PageID #170, ¶ 10.) After deduction for litigation costs, Interim

Class Counsel's attorneys' fees award of $27,412.02, or 32.06% of the total settlement amount,

is less than a one-third percentage of the fund award typically ordered in complex wage and hour

cases. The value of the benefit rendered to the class eminently favors approval of the requested

award. Sixth Circuit authority favors approval. The requested attorney fee award and costs

reimbursement should be approved for all of the following reasons.

The Sixth Circuit has approved the lodestar or percentage-of-the-fund method to

determine a reasonable attorney's fee. *See Rawlings v. Prudential–Bache Prop., Inc.*, 9 F.3d 513,

515–16 (6th Cir. 1993); *see Carr v. Guardian Healthcare Holdings, Inc.*, S.D.Ohio No. 2:20-cv-

6292, 2022 U.S. Dist. LEXIS 32094, at *22-27 (Jan. 19, 2022). "In this district, 'the preferred

method is to award a reasonable percentage of the fund, with reference to the lodestar and the

resulting multiplier.'" *Swigart v. Fifth Third Bank*, S.D.Ohio No. 1:11-cv-88, 2014 U.S. Dist.

LEXIS 94450, at *14-15 (July 11, 2014) (citing *Connectivity Sys. Inc. v. Nat'l City Bank,* No.

2:08–CV–1119, 2011 WL 292008, at *13 (S.D.Ohio Jan.26, 2011)). Another district has noted

that "[t]he percentage of the common fund method has the advantage of establishing reasonable

expectations on the part of class counsel 'as to their expected recovery,' and encourag[es] early

settlement before substantial fees and expenses have accumulated." *Dillworth v. Case Farms*

*Processing, Inc.*, N.D.Ohio No. 5:08-cv-1694, 2010 U.S. Dist. LEXIS 20446, at *19 (Mar. 8, 2010).

### 1. The *Ramey* Six-Factor Test Supports the Reasonableness of the Fee Award

Under the percentage-of-fund method, courts consider the six "*Ramey* Factors." *See Carr,* 2022 U.S. Dist. LEXIS 32094, at *22-27 (citing *Ramey v. Cincinnati Enquirer, Inc.*, 508 F.2d 1188, 1196 (6th Cir. 1974)); *Clark v. Pizza Baker, Inc.,* S.D.Ohio No. 2:18-cv-157, 2022 U.S. Dist. LEXIS 198354, at *17-22 (Oct. 31, 2022) (applying *Ramey)* (citing *Castillo,* 2015 WL 13021899, at *6). In determining the reasonableness of the fee award, a court considers the following factors: (1) the value of the benefit rendered to the class (*i.e.*, the results achieved); (2) society's stake in rewarding attorneys who produce such benefits in order to maintain an incentive to others; (3) whether the services were undertaken on a contingent fee basis; (4) the value of the services on an hourly basis; (5) the complexity of the litigation; and (6) the professional skill and standing of counsel involved on both sides. *Ramey*, 508 F.2d at 1196 (citations omitted). As discussed below, each *Ramey* Factor favors approval of the requested award.

***Ramey* Factor 1 – the Value of the Benefits Rendered to the Class**: The recovery for the class here is exemplary. Settlement payments to Covered Class Members – after deduction of attorneys' fees and expenses – represent payments equating to an average of approximately 117% of the damages calculated by Plaintiff's and Defendants' Counsel. Class Members will receive consideration for release of claims notwithstanding the practical and legal reality that many Class Members have relatively minor damages during the relevant time period. (*See* Ex. 3, Final Class Member List.)

As to the Settlement Class, such allocations are "well above the 7 % to 11 % average result achieved for class members." *Dillworth*, 2010 U.S. Dist. LEXIS 20446, at *20 (citing *see* Frederick C. Dunbar, Todd S. Foster, Vinita M. Juenja, Denise N. Martin, Recent Trends III: *What Explains Settlements in Shareholder Class Actions?* (National Economic Research Assocs. (NERA) June 1995)); *Clark*, 2022 U.S. Dist. LEXIS 198354, at *18 (approving settlement providing 29.9% of calculated damages to class members). As such, the settlement "provides relatively early relief to class members, and it eliminates the additional risks the parties would otherwise bear if this litigation were to continue." *Barnes v. Winking Lizard, Inc.*, N.D.Ohio No. 1:18CV952, 2019 U.S. Dist. LEXIS 65657, at *14 (Mar. 26, 2019).

**<u>Ramey</u> Factor 2 – <u>Society's Interest in Rewarding the Attorneys</u>:** This factor favors approval because "society has a stake in rewarding the efforts of the attorneys who bring wage and hour cases, as these are frequently complex matters." *Gentrup v. Renovo Servs., LLC*, 2011 U.S. Dist. LEXIS 67887, *14 (S.D. Ohio, June 24, 2011); *accord Clark,* 2022 U.S. Dist. LEXIS 198354, at *21-22 (class actions "allow[] low-wage workers to recover unpaid wages, many of whom would likely not have been willing or able to pursue their claims individually"). Only through the class action devise, as utilized by competent counsel, will the employees' rights here to unpaid overtime compensation be vindicated. It is in society's interest that employees be lawfully and properly compensated for their work time. This factor supports approval.

**<u>Ramey</u> Factors 3-4 – <u>Value of the Services Rendered, and Contingent Fee Basis</u>:** The legal services provided in this case were undertaken on a contingency fee basis whereby Plaintiff as class representative agreed to compensate counsel in the amount of 33 1/3% of the total recovery (or as awarded and/or approved by the Court) – an amount commonly approved in wage and hour matters across the Sixth Circuit as reasonable. However, Interim Class Counsel

13

here seeks to recover a lesser amount of 32.06% of the total recovery after deduction for reimbursed litigation expenses, which falls below the "one-third" reasonable amount. The contingent nature of the fee agreement meant that counsel bore the risk of receiving no fee if the case was not successful and strongly supports that the requested award is reasonable – as in any wage and hour matter, there is a real potential that Defendants could win outright and leave Plaintiff and the class with no recovery. Moreover, as further explained below, the value of the services rendered on an hourly basis (as of August 9, 2023, the date Interim Class Counsel's Declaration was finalized) is $55,642.50, a lodestar multiplier of 0.493, which will be further reduced (*see* Section *V, D, 2, b* below) after the addition of additional hours counsel collectively has and will spend preparing, reviewing changes by defense counsel, and finalizing the briefing of this motion and memorandum, declaration and related exhibits, preparing for and participating in the Fairness Hearing, and any other work completed since August 9, 2023 and through the conclusion of this matter, including relating to finalizing this case and overseeing administration of the settlement. This negative multiplier is well within the range of similar cases approved within the Sixth Circuit, and also favors approval. *Swigart,* 2014 U.S. Dist. LEXIS 94450, at *17-18 (approving requested fee of $1,320,000 where cumulative lodestar amounted to $512,885, or a 2.57 multiplier "which is consistent with other risk multipliers approved in complex class actions in this Circuit") (citing *see, e.g., Lowther v. AK Steel Corp.,* S.D.Ohio No. 1:11-cv-877, 2012 U.S. Dist. LEXIS 181476, 2012 WL 6676131, at *5-6 (Dec. 21, 2012) (awarding $1,275,000 in fees with a lodestar cross-check of $416,669.48 (3.06 multiplier)).

**_Ramey Factor 5 – Complexity of the Litigation_:** Fifth, "[w]age-and-hour collective and class actions are, by their very nature, complicated and time-consuming." *Swigart,* 2014 U.S.

Dist. LEXIS 94450, at *18 (citing *see Beckman v. KeyBank, N.A.*, 293 F.R.D. 467, 478-479

(S.D.N.Y.2013)). As observed in *Barnes,* 2019 U.S. Dist. LEXIS 65657, at *16-17:

> This is particularly true [] where Plaintiffs alleged overtime claims under the FLSA, and under the state laws of Ohio. Resolving the procedural issues, the merits, and damages would have been risky, costly, and time consuming. Accordingly, the litigation was difficult and complex, and this factor weighs in favor of awarding the requested fees.

The case here was likewise complex. As summarized in *Section V, D, 2, b* below, the

tasks required of Interim Class Counsel in this case were substantial, requiring, as of August 9,

2023, a collective 132.5 hours of attorney time by Interim Class Counsel. Ultimately, Interim

Class Counsel's comprehensive investigation included an analysis of the wage-and-hour

information and other data and documents comprising 1,900 pages of PDF documents, and

Microsoft Excel compatible spreadsheets containing payroll data comprised of approximately

168,000 data points, which permitted a precise calculation of the alleged unpaid overtime wages

for Plaintiff and all Class Members based off 100% of Plaintiff's and all Class Members' payroll

records during the relevant period. The comprehensive discovery, intricate analyses, and other

litigation requirements were difficult and time-consuming, but ultimately proved instrumental to

the negotiation of the proposed Settlement.

> *Ramey Factor 6 – Professional Skill and Standing of Counsel*: Last, Interim Class

Counsel is highly experienced in wage and hour class and collective actions. (*See* ECF #27-4,

Decl. of Counsel for Preliminary Approval at ¶¶ 6-13.) The professional standing and skill of the

attorneys on both sides meets a high standard, and the competency and efficient handling of this

matter reflects the exemplary recovery provided to Class Members. *See Wright v. Premier*

*Courier, Inc.*, S.D.Ohio No. 2:16-cv-420, 2018 U.S. Dist. LEXIS 140019, at *18-19 (Aug. 17,

2018) (approving one-third attorney fee award and noting "the hours expended and time records

submitted by Class Counsel [including Scott & Winters] further underscore their competency and efficient handling of this matter, favoring approval."); *Macaluso v. Zirtual Startups, LLC*, S.D.Ohio No. 2:19-CV-3616, 2021 U.S. Dist. LEXIS 154243, at *19 (Aug. 17, 2021) ("The professional skill and standing of the attorneys involved weighs in favor of granting Plaintiffs' counsel's requested fee award…. Plaintiff's counsel [Scott & Winters] brings substantial collective experience in litigating claims under [the] FLSA.").

### 2. A Lodestar Cross-Check Supports the Reasonableness of the Requested Fee

*Rawlings,* 9 F.3d at 517 (emphasis added), held that "use of **either** the lodestar or percentage of the fund method of calculating attorney's fees is appropriate in common fund cases" and "the determination of which method is appropriate in any given case will depend upon its circumstances." *Accord Gascho v. Global Fitness Holdings, LLC*, 822 F.3d 269, 279 (6th Cir.2016) ("District courts have the discretion to select the particular method of calculation, but must articulate the reasons for adopting a particular methodology and the factors considered in arriving at the fee.") (internal quotations and citations omitted). The court has discretion to select one method over the other, or to use them in combination. *Id.*; *see, e.g., Bowling v. Pfizer, Inc.,* 102 F.3d 777, 780 (6th Cir.1996) ("the district court based its fee award on a percentage of the common fund and then cross-checked the fee against class counsel's lodestar"); *Thorn v. Bob Evans Farms, Inc.*, No. 2:12-CV-00768, 2016 U.S. Dist. LEXIS 195207, 2016 WL 8140448, at *3 (S.D. Ohio Feb. 26, 2016). However, a "cross-check of the attorney-fee request using Class Counsel's lodestar is optional…" *Feiertag v. DDP Holdings, LLC*, S.D.Ohio No. 14-CV-2643, 2016 U.S. Dist. LEXIS 122297, at *21 (Sep. 9, 2016).

When applying a lodestar cross-check of a percentage-of-the-fund attorney fee award, the award is reasonable when it amounts to a multiplier of approximately 2.5. *See Castillo*, 2015

U.S. Dist. LEXIS 192936, at *22-23 ("Class Counsel's cumulative lodestar of $263,479.00, compared to its requested fee of $660,000.00, yields a lodestar multiplier of approximately 2.5. This is typical of lodestar multipliers in similar cases."). *Swigart,* 2014 U.S. Dist. LEXIS 94450, at *18 (approving multiplier of 2.57 in a FLSA case); *Feiertag,* 2016 U.S. Dist. LEXIS 122297, at *20-21 (citing *Johnson v. Midwest Logistics Sys., Ltd*., No. 2:11-cv-1061, 2013 U.S. Dist. LEXIS 74201, 2013 WL 2295880, at *6 (S.D. Ohio May 24, 2013) (additional citations omitted)); *Ganci v. MBF Insp. Servs*., S.D.Ohio No. 2:15-cv-2959, 2019 U.S. Dist. LEXIS 207645, at *18 (Dec. 3, 2019) ("Given that courts frequently approve attorney's fee awards equaling two to three times the lodestar amount, the fees sought by Class Counsel in this case are well within the reasonable range.") (citing *see Dillow v. Home Care Network, Inc*., No. 2:16-cv-612, 2018 U.S. Dist. LEXIS 170579, at *17-18, 2018 WL 4776977, at *7 (S.D. Ohio Oct. 3, 2018) (approving fee award that was "approximately 2.9 times the lodestar" and noting that the multiplier "is well within the acceptable range of multipliers" for a wage and hour action); *Lowther*, 2012 U.S. Dist. LEXIS 181476, at *17-18, 2012 WL 6676131, at *5 (S.D. Ohio Dec. 21, 2012) (approving a "very acceptable" 3.06 multiplier and citing cases finding multipliers ranging from 4.3 to 8.74 to be reasonable) (additional citations omitted)).

### a. Interim Class Counsel's Hourly Rates are Reasonable

Under the lodestar method, for purposes of determining a reasonable attorneys' fee, the hourly rate must be calculated in accordance with the prevailing market rate in the relevant community. *Blum v. Stenson*, 465 U.S. 886, 895, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984). Generally, the "prevailing market rate [is] defined as the rate that lawyers of comparable skill and experience can reasonably expect to command within the venue of the court of record." *Geier v. Sundquist,* 372 F.3d 784, 791 (6th Cir.2004) (citing *Adcock–Ladd v. Secretary of*

*Treasury,* 227 F.3d 343, 350 (6th Cir.2000); *Osman v. Grube, Inc., N.D.Ohio No. 3:16-cv-00802-JJH,* 2018 U.S. Dist. LEXIS 78222, at \*8-10 (May 4, 2018). Interim Class Counsel Joseph F. Scott, Ryan A. Winters, and Kevin M. McDermott II each have extensive experience in complex civil wage litigation, including Fed. R. Civ. P. 23 class actions, 29 U.S.C. § 216(b) collective actions, and individual wage and hour actions. (*See* ECF #27-4, Decl. of Counsel for Preliminary Approval at ¶¶ 6-13.) The applicable hourly rates for Interim Class Counsel in this complex class action wage and hour matter are $500, $425, and $400, respectively.

Interim Class Counsel Scott & Winters Law Firm's requested hourly rates were specifically found as reasonable in *Gunter v. Diamond Technical Services, Inc*., No. 2:20-cv-01428, ECF #43 (W.D. Penn. May 6, 2022) (Stickman, J.). In *Gunter,* noting that "[t]he Court [] finds that Class Counsel's attorney hours and hourly rates are reasonable," *id*., the court approved Joseph F. Scott's reasonable requested hourly rate of $550; Attorney Ryan A. Winters' reasonable requested hourly rate of $425; and Attorney Kevin M. McDermott II's requested reasonable hourly rate of $385, *see Gunter* Decl. of Class Counsel, ECF #41-3 at 5, ¶ 9. Even more recently, Scott's, Winters's and McDermott's requested rates of $500, $425, and $400, respectively, were reviewed and not objected to in the context of class/collective action settlements. *See Rapp v. Forest City Techs., Inc.,* No. 1:20-cv-02059, ECF ##90-4 ¶ 10 (Declaration of Counsel, requesting hourly rates of $500, $425, and $400, for Scott, Winters, and McDermott, respectively), 91 (Order Granting Final Approval) (N.D. Ohio Feb. 16, 2023); *McKnight v. Erico Int'l Corp*., No. 1:21-cv-01826, ECF ##45-4 ¶ 10 (Declaration of Counsel, requesting hourly rates of $500, $425, and $400, for Scott, Winters, and McDermott, respectively), 47 (Order Granting Final Approval, noting that "Ryan A. Winters, Joseph S. Scott, and Kevin McDermott, II—have "extensive experience in complex civil wage litigation")

(citation omitted) (N.D. Ohio Feb. 8, 2023). *See also Foster v. Residential Programs*, S.D.Ohio No. 2:19-cv-2358, 2021 U.S. Dist. LEXIS 30963, at *13 (Feb. 18, 2021) (approving hourly rates in wage and hour litigation ranging from $350 to $500); *Waters v. To You*, S.D.Ohio No. 3:19-cv-372, 2022 U.S. Dist. LEXIS 139084, at *13-14 (Aug. 1, 2022) (approving $600 to $350 hourly rates in wage and hour case); *Perry v. Beard*, S.D.Ohio No. 3:17-cv-161, 2021 U.S. Dist. LEXIS 13717, at *12 (Jan. 23, 2021) (noting that "[c]ourts within the Sixth Circuit have found hourly rates ranging from $300 to $450 to be reasonable for work on FLSA actions…") (citing *see also Berry v. Fun Time Pool & Spa, Inc*., No. 2:20-cv-1610, 2020 U.S. Dist. LEXIS 148836, 2020 WL 4784654, at *2 (S.D. Ohio Aug. 18, 2020) ($445); *Rangel v. Paramount Heating & Air Conditioning, LLC*, No. 2:17-cv-473, 2020 U.S. Dist. LEXIS 39157, 2020 WL 1080418, at *2 (S.D. Ohio Mar. 6, 2020) ($350); *Pineda v. Pit Columbus, LLC*, No. 2:17-cv-668, 2017 U.S. Dist. LEXIS 195288, 2017 WL 5900559, at *4 (S.D. Ohio Nov. 28, 2017) ($450) (additional citations omitted)); *Clark*, 2022 U.S. Dist. LEXIS 198354, at *20-21; *Estate of McConnell v. EUBA Corp*., No. 3:18-cv-00355, 2021 U.S. Dist. LEXIS 92836, at *19 (S.D. Ohio May 17, 2021) ($600 - $350); *Gresky v. Checker Notions Co*., No. 3:21-cv-01203, 2022 U.S. Dist. LEXIS 154506, at *21-29 (N.D. Ohio Aug. 26, 2022) (approving as reasonable a $400 rate for attorney who was admitted and started practicing wage and hour law in November, 2013 (similar to Attorney McDermott), as well as a $450 rate for attorney who was admitted to practice in 2009 (similar to Attorney Winters (admitted 2010), whose current rate is $425)).

### b.  Interim Class Counsel's Hours Expended are Reasonable

As of August 9, 2023, the date Interim Class Counsel's Declaration was finalized, Interim Class Counsel had a collective 132.5 hours in this case – a fee lodestar of $55,642.50 based on the above rates. Specifically, Joseph F. Scott had 22.5 hours at $500 per hour; Ryan A. Winters

had 15.7 hours at $425 per hour; and Kevin M. McDermott II had 94.3 hours at $400 per hour. (Ex. 4, Decl. of Interim Class Counsel at ¶ 17.) Interim Class Counsel's multiplier as of August 9, 2023 was 0.493, a fraction of the 2.5+ multipliers routinely approved in similar wage and hour cases referenced above that were found as reasonable. (*See id.* at ¶¶ 17-18.)

The tasks required of Interim Class Counsel in this case were of no small undertaking. Interim Class Counsel's efforts included pre-litigation investigation of Named Plaintiff's and other Class Members' claims; preparation of the original Complaint; negotiation and submission of the parties' Rule 26(f) report; and investigation of current and former employees of Defendants and putative Class Members. (*Id.* at ¶ 13.) Formal, comprehensive discovery included written discovery, and, ultimately, Defendants provided responses to *Plaintiff's Omnibus First Set of Discovery Requests to Defendants*, produced approximately 1,900 pages of PDF documents, and produced Microsoft Excel compatible spreadsheets containing payroll data comprised of approximately 168,000 data points, which permitted a precise calculation of the alleged unpaid overtime wages for Plaintiff and all Class Members based off 100% of Plaintiff's and all Class Members' payroll records during the relevant period. (*Id.* at ¶ 14.) Interim Class Counsel's comprehensive analysis and final computations permitted a calculation of the unpaid wages for the Plaintiff and all other members of the proposed Settlement Class. (*Id.* at ¶ 16.) Interim Class Counsel's comprehensive investigation included an analysis of the wage-and-hour information and other data and documents comprising of tens of thousands of data points from the records produced by Defendants which permitted the parties to compute a calculation of the alleged unpaid overtime for the Named Plaintiff and putative Rule 23 Class Members. Based on the size of the data set, the analyses were time-consuming, but proved instrumental to the negotiation of the proposed Settlement. (*Id.*)

Interim Class Counsel also conducted extensive investigations into the facts before and during the prosecution of the Action. (*Id.* at ¶ 15.)This discovery and investigation included, among other things, (a) multiple meetings and conferences with the Court, Plaintiff, and Defendants' Counsel; (b) inspection and analysis of a statistically significant percentage – 100% – of the class-wide payroll documents produced by the Defendants including analysis of wage-and-hour information and other data and documents and development of a data analysis and methodology comprising of over 168,000 data points from the records produced by Defendants; (c) analysis of the legal positions taken by Defendants; (d) investigation into the viability of class treatment and collective action treatment; (e) analysis of potential class-wide damages; and (f) research of the applicable law with respect to the claims and potential defenses thereto. (*Id.*)

Moreover, Interim Class Counsel's lodestar has not been adjusted to account for the time Interim Class Counsel will expend fulfilling the obligations in the Settlement Agreement, monitoring the administration of the Settlement, continuing to respond to questions and inquiries from Named Plaintiff and the hourly employees of Defendants who comprise of the Settlement Class, and continuing representation of Plaintiff and Class Members through the conclusion of this matter and disbursement of settlement proceeds. (*Id.* at ¶ 19.) Interim Class Counsel have extensive experience in these matters, and are well familiar with the additional tasks that Counsel will dutifully complete through this matter's conclusion. (*Id.*) The timeline for settlement administration established by the parties' agreement will require the settlement administration to last a minimum of six months after the final approval order is entered. Once final approval is entered, and settlement checks are sent to all Class Members, Interim Class Counsel may receive telephone calls, text messages and emails from Class Members regarding the case. (*Id.*) Class participants routinely contact Counsel for questions regarding the exact nature of the litigation,

21

the effect of settlement, the precise calculation methodology for their individual awards, and the anticipated timeline for receiving a payment, even after the entering of final approval. (*Id*.; *see* ECF #27-1, Settlement Agreement.) The demands on Interim Class Counsel in completing its obligations as anticipated permanent Class Counsel, as well as overseeing administration of a class settlement, is of no small undertaking. (*Id*.)

Interim Class Counsel's lodestar also does not include the approximately 10-20 additional attorney hours counsel collectively has and will spend preparing, reviewing changes by defense counsel, and finalizing the briefing of this motion and related exhibits up to and until the filing of this motion (between August 9, 2023 (Interim Class Counsel's declaration date) and the date of this filing), preparing for and participating in the Fairness Hearing, and any other work completed since August 9, 2023 to the date the final approval order is entered. (*Id.* at ¶ 20.) Interim Class Counsel therefore expects that the total attorney hours expended at the final conclusion of this matter, more than six (6) months from the drafting of Interim Class Counsel's declaration, will be approximately 148.5 - 158.5 total lodestar hours, a lodestar amount (based upon an average rate of $441.67) of $65,587.50- $70,004.17, or a (negative) lodestar multiplier of 0.42 – 0.39. (*Id*.)

At a combined fee lodestar of $55,642.50 (as of August 9, 2023), the requested attorney fee of $27,412.02 results in a significant "negative multiplier" of .493, and a projected final negative multiplier of 0.42 – 0.39,  if the Court approves the requested settlement payment as to attorneys' fees. (*See* Ex. 4 at ¶ 21.) Such a negative multiplier eminently supports that the fee sought is reasonable, *see, e.g, Rikos v. P&G*, S.D.Ohio No. 1:11-cv-226, 2018 U.S. Dist. LEXIS 72722, at *26 (Apr. 30, 2018) (citing *see Walls v. JP Morgan Chase Bank, N.A*., Case No. 3:11-cv-673-DJH, 2016 U.S. Dist. LEXIS 142325, at * 18 (W.D. Ky. Oct. 13, 2016)), and given that

Interim Class Counsel's current and projected final lodestar is on the very low end of the acceptable range, a lodestar cross-check of the attorneys' fees to be paid to Interim Class Counsel eminently supports the reasonableness of the fee request. *See, e.g., Waters*, 2022 U.S. Dist. LEXIS 139084, at *13 (approving 3.79 multiplier in FLSA case) (citing *Arp v. Hohla & Wyss Enters., LLP*, No. 3:18-cv-119, 2020 U.S. Dist. LEXIS 207512, at *19 (S.D. Ohio Nov. 5, 2020) (approving a multiplier of 5.29)); *Swigart*, 2014 U.S. Dist. LEXIS 94450, at *17-18 (approving 2.57 multiplier); *Dillow*, 2018 U.S. Dist. LEXIS 170579, at *17-18 (approving 2.9 multiplier); *Lowther*, 2012 U.S. Dist. LEXIS 181476, at *17-18 (approving 3.06 multiplier and noting ranges from 4.3 to 8.74 have been found to be reasonable); *Ganci*, 2019 U.S. Dist. LEXIS 207645, at *18 ("courts frequently approve attorney's fee awards equaling two to three times the lodestar amount...").

### 3. The Lodestar Method Also Supports the Reasonableness of the Requested Fee

As noted above, in the Sixth Circuit, "use of **either** the lodestar or percentage of the fund method of calculating attorney's fees is appropriate in common fund cases," and "the determination of which method is appropriate in any given case will depend upon its circumstances," *Rawlings*, 9 F.3d at 517 (emphasis added) – the court has discretion to select one method over the other, or to use them in combination, *see Bowling*, 102 F.3d at 780.

Interim Class Counsel recognize that, as a result of the 15 requests for exclusion received during the notice period, the final amount ultimately paid to Covered Class Members in this case will be $22,710.21, as opposed to the $49,000.00 "Net Settlement Fund" provided for in the Settlement Agreement. Nevertheless, the participating Covered Class Members will still be paid, even after deduction of attorneys' fees and expenses, an average of 117% of each Class Member's possible overtime damages, subject to a $100 minimum payment. This is

notwithstanding the fact that Ohio overtime law, as opposed to the FLSA, contains no liquidated damages provision. Under the facts of this case, the recovery is indisputably exceptional to the Covered Class Members. *See, e.g., Clark,* 2022 U.S. Dist. LEXIS 198354, at *10, 18 (approving a "fair, adequate, and reasonable" settlement providing class members 29.9% of their alleged unpaid wages).

That said, based on the lodestar method, as outlined above with respect to the percentage of the fund cross-check analysis, Interim Class Counsel's attorney fee recovery is eminently reasonable. Interim Class Counsel's current (.493) and projected final lodestar (0.42 – 0.39) is on the very low-end of the acceptable range, a negative multiplier, in light of the recovery provided to Plaintiff and Covered Class Members. In other words, **Named Plaintiff and Covered Class Members will recover an average of approximately 117% of their calculated wage damages, and Interim Class Counsel will recover approximately 40-50% of their lodestar attorney fees at the final conclusion of this matter.**

Interim Class Counsel has agreed to such a relatively small recovery in this matter both to provide as much benefit to the affected employees as possible, as well as to eliminate the risk and delay of further litigation. When taking this matter, Interim Class Counsel Scott & Winters was prepared to invest time and resources with the very real possibility of an unsuccessful outcome and no fee of any kind, and has agreed to a substantial discount to the benefit of Defendant's employees.

Interim Class Counsel therefore respectfully submits that the attorneys fees requested in this matter are fair, reasonable and adequate, and fulfill the purpose and intent of the FLSA and Ohio law attorney fees provisions, an amount that satisfies the Sixth Circuit's standard for FLSA and Fed. R. Civ. P. 23 attorney fee awards.

4.      **The Costs Expended by Interim Class Counsel were Both Reasonable and Necessary**

Interim Class Counsel also maintain records regarding costs expended on each case. (Ex. 4, Decl. of Interim Class Counsel at ¶ 22.) Interim Class Counsel has incurred, and will incur through administration of this matter, reimbursable out-of-pocket expenses in this case in the amount of $1,087.98. (*Id*.) These costs and expenses consist of the case filing fee, service of the complaint / postage costs, and administration costs related to conditional certification notice to class members, in the total amount of $1,087.98. (*Id*.) In addition, the settlement includes a payment to settlement administrator Rust Consulting for costs of administration in the amount of $8,000.00. (ECF #27-1, Settlement Agreement at PageID #170-71, ¶ 11.) These expenses constitute costs that were reasonably necessary to prosecute and finalize the action and administrate the settlement.

## VI.     CONCLUSION

For the reasons addressed herein and in the Preliminary Approval Motion, the parties respectfully ask the Court to approve this Settlement and enter the Proposed Final Order and Judgment attached as Exhibit 1.


        Respectfully Submitted,


*s/ Kevin M. McDermott II*            *s/ Morris L. Hawk      (via email consent)*
Joseph F. Scott (0029780) (Trial Counsel)    Morris L. Hawk (0065495) (Trial Counsel)
Ryan A. Winters (0086917)            mhawk@ralaw.com
**SCOTT & WINTERS LAW FIRM, LLC**        **ROETZEL & ANDRESS, LPA**
P: (216) 912-2221      F: (440) 846-1625    1375 East Ninth Street
50 Public Square, Suite 1900            One Cleveland Center, 10th Floor
Cleveland, OH 44113                Cleveland, OH 44114
jscott@ohiowagelawyers.com            (T) 216.623.0150 (F) 216.623.0134
rwinters@ohiowagelawyers.com

                        *Attorney for Defendants*

Kevin M. McDermott II (0090455)
**SCOTT & WINTERS LAW FIRM, LLC**
P: (216) 912-2221      F: (440) 846-1625
11925 Pearl Rd., Suite 310
Strongsville, Ohio 44136
kmcdermott@ohiowagelawyers.com

*Attorneys for Plaintiff and*
*Interim Class Counsel*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a copy of the foregoing was filed electronically.

Notice of this filing will be sent by operation of the Court's electronic filing system to all parties

indicated on the electronic filing receipt.

*/s Kevin M. McDermott II*
Kevin M. McDermott II (0090455)